TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS (Cal. Bar No. 144524)
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4536/2484
    Facsimile: (213) 894-3713
    E-mail:   joseph.johns@usdoj.gov
              dennis.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>LOLLI BROS. LIVESTOCK MARKET,<br>INC.,<br><br>      Defendant. | No. 8:16-CR-00167-CAS<br><br>PLEA AGREEMENT FOR DEFENDANT<br>LOLLI BROS. LIVESTOCK MARKET,<br>INC. |

    1.   This constitutes the plea agreement between LOLLI BROS. LIVESTOCK MARKET, INC. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>RULE 11(c)(1)(C) AGREEMENT</u>

    2.   Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that

it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty plea entered pursuant to this agreement, this agreement will, with the exception of paragraph 24 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement.  Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 24 and 25 below, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

DEFENDANT'S OBLIGATIONS

3.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in <u>United States v. James Del Lolli, Darin Scott Ziebarth, and Lolli Bros. Livestock Market, Inc.</u>, No. 8:16-CR-00167-CAS, which charges defendant with Conspiracy, in violation of 18 U.S.C. § 371.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 17 of this agreement.

d.   Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court, if the Court orders the preparation of a presentence investigation report.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

4.   Defendant further agrees to cooperate fully with the USAO and the United States Fish and Wildlife Service.  This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

d.   The government herein stipulates and agrees that defendant has already specifically agreed to cooperate in the follow two matters:

i.   In Re: Wildlife Trafficking Investigation in the Southern District of Florida.

1          ii.   United States v. James Del Lolli and Darin Scott
2    Ziebarth, Case No. 8:16-CR-00167.

3        5.   Defendant further agrees:

4        a.   To forfeit all right, title, and interest in the
5    property involved in the illegal activity to which defendant is
6    pleading guilty, specifically, the following: (1) five rhino horn
7    daggers (unknown species) (Seizure Tag #766232); one black rhino
8    shoulder mount and one white rhino shoulder mount (Seizure Tag
9    #766233); and two black rhino horn pieces (Seizure Tag #766639)
10   (collectively, the "Forfeitable Assets").

11       b.   To the Court's entry of an order of forfeiture at or
12   before sentencing with respect to the Forfeitable Assets and to the
13   forfeiture of the assets.

14       c.   To take whatever steps are necessary to pass to the
15   United States clear title to the Forfeitable Assets, including,
16   without limitation, the execution of a consent decree of forfeiture
17   and the completing of any other legal documents required for the
18   transfer of title to the United States.

19       d.   Not to contest any administrative forfeiture
20   proceedings or civil judicial proceedings commenced against the
21   Forfeitable Assets.  If defendant submitted a claim and/or petition
22   for remission for all or part of the Forfeitable Assets on behalf of
23   himself or any other individual or entity, defendant shall and hereby
24   does withdraw any such claims or petitions, and further agrees to
25   waive any right he may have to seek remission or mitigation of the
26   forfeiture of the Forfeitable Assets.

27       e.   Not to assist any other individual in any effort to
28   falsely contest the forfeiture of the Forfeitable Assets.

4

   f. Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

   g. To prevent the transfer, sale, destruction, or loss of the Forfeitable Assets described above to the extent defendant has the ability to do so.

   h. That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

THE USAO'S OBLIGATIONS

 6. The USAO agrees to:

   a. Not contest facts agreed to in this agreement.

   b. Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 17 of this agreement.

   c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the appropriate sentence pursuant to paragraphs 16 and 17 below, the propriety and extent of any departure from that range, and the sentence to be imposed.

   d. Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of federal law arising out of defendant's conduct described in the agreed-to factual basis attached to this memorandum of plea agreement as Exhibit A.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or

5

1    any unlawful conduct that occurs after the date of this agreement.

2    Defendant agrees that at the time of sentencing the Court may

3    consider the uncharged conduct in determining the applicable

4    Sentencing Guidelines range, the propriety and extent of any

5    departure from that range, and the sentence to be imposed after

6    consideration of the Sentencing Guidelines and all other relevant

7    factors under 18 U.S.C. § 3553(a).

8         7.   The USAO further agrees:

9              a.   In connection with defendant's sentencing, to bring to

10   the Court's attention the nature and extent of defendant's

11   cooperation.

12             b.   To reduce the agreed upon fine of $500,000 to $350,000

13   in recognition of defendant's cooperation efforts to date for the In

14   Re: Wildlife Trafficking Investigation in the Southern District of

15   Florida and defendant's agreement to continue to cooperate in all

16   further proceedings in the matter of United States v. James Del Lolli

17   and Darin Scott Ziebarth, Case No. 8:16-CR-00167.

18             DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

19        8.   Defendant understands the following:

20             a.   Any knowingly false or misleading statement by

21   defendant will subject defendant to prosecution for false statement,

22   obstruction of justice, and perjury and will constitute a breach by

23   defendant of this agreement.

24             b.   Nothing in this agreement requires the USAO or any

25   other prosecuting, enforcement, administrative, or regulatory

26   authority to accept any cooperation or assistance that defendant may

27   offer, or to use it in any particular way.

28

1        c.   The government has agreed to reduce defendant's fine

2    from $500,000 to $350,000 in this binding plea agreement in

3    recognition of defendant's cooperation efforts to date for the <u>In Re:</u>

4    <u>Wildlife Trafficking Investigation</u> in the Southern District of

5    Florida and defendant's agreement to continue to cooperate in all

6    further proceedings in the matter of <u>United States v. James Del Lolli</u>

7    <u>and Darin Scott Ziebarth</u>, Case No. 8:16-CR-00167.

8    <u>CORPORATE AUTHORIZATION</u>

9        9.   Defendant represents that it is authorized to enter into

10   this Agreement.  On or before the date of entry of its plea of

11   guilty, defendant shall provide to the USAO and file with the Court a

12   notarized legal document certifying that defendant is authorized to

13   enter into and comply with all of the provisions of this Agreement.

14   Such corporate resolution shall designate a corporate representative

15   authorized to take these actions, enter a plea on defendant's behalf,

16   and indicate that all corporate formalities for such authorizations

17   have been observed.

18   <u>ORGANIZATIONAL CHANGES AND APPLICABILITY</u>

19       10.   This Agreement shall bind defendant, its successor

20   corporation(s), if any, and any other person or entity that assumes

21   the liabilities contained herein ("successor-in-interest").  No

22   change in name, change in corporate or individual control, business

23   reorganization, change in ownership, merger, change of legal status,

24   sale or purchase of assets, or similar action shall alter defendant's

25   responsibilities under this Agreement.  Defendant shall not engage in

26   any action to seek to avoid the obligations and conditions set forth

27   in this Agreement.

28   //

RESPONDEAT SUPERIOR

11.   The parties stipulate and agree that under principles of corporate liability and respondeat superior, as these principles apply in this case, defendant is liable for the actions of its agents and employees.  New York Central and Hudson River R.R. v. United States, 212 U.S. 481, 495 (1909); United States v. Beusch, 596 F.2d 871, 877-878 (9th Cir. 1979); United States v. Hilton Hotels Corporation, 467 F.2d 1000, 1004-1007 (9th Cir. 1972).

NATURE OF THE OFFENSE

12.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: (1) beginning on or about a date unknown, and ending on or about February 18, 2012, there was an agreement between two or more persons to commit at least one crime as charged in the indictment; (2) at least one of those persons entering into that agreement was an employee of the defendant, operating within the scope of his or her employment, and motivated, at least in part, by an intent to benefit defendant; (3) the defendant's employee or employees became a member, or became members, of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (4) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

PENALTIES

13.   Defendant understands that the statutory maximum sentence that the Court can impose against a corporation for a violation of Title 18, United States Code, Section 371, is: a five year period of probation; a fine of $500,000 or twice the gross gain or gross loss

1  resulting from the offense, whichever is greatest; and a mandatory
2  special assessment of $400.

3  SUSPENSION/REVOCATION/DEBARMENT

4  14.  Defendant understands that if defendant holds any
5  regulatory license or permit, the conviction in this case may result
6  in the suspension or revocation of such license and/or permit.  By
7  this Agreement, the USAO makes no representation or promise
8  concerning suspension or debarment of defendant from contracting with
9  the United States or with any office, agency, or department thereof.
10  Suspension and debarment of organizations convicted under various
11  federal regulatory protection and criminal statutes is a
12  discretionary administrative action solely within the authority of
13  the federal contracting agencies.

14  FACTUAL BASIS

15  15.  Defendant admits that defendant is, in fact, guilty of the
16  offense to which defendant is agreeing to plead guilty.  Defendant
17  and the USAO agree to the statement of facts attached hereto and
18  incorporated herein as Exhibit A and agree that this statement of
19  facts is sufficient to support a plea of guilty to the charge
20  described in this agreement and to justify the specified sentence set
21  forth in paragraph 17 below but is not meant to be a complete
22  recitation of all facts relevant to the underlying criminal conduct
23  or all facts known to either party that relate to that conduct.

24  SENTENCING FACTORS AND AGREED-UPON SENTENCE

25  16.  Defendant and the USAO agree and stipulate that, pursuant
26  to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and
27  8C2.10, the sentencing guidelines are not applicable in determining
28  the fine for an organization violating statutes relating to offenses

1  involving wildlife (U.S.S.G. § 2Q2.1).  Therefore, defendant

2  understands that in evaluating an appropriate sentence for

3  defendant's criminal conduct, the Court is required to consider the

4  factors set forth in 18 U.S.C. §§ 3553(a)(1)-(7) and 3572, rather

5  than U.S.S.G. §§ 8C2.1 and 8C2.10.

6      17.  Defendant and the USAO agree that, taking into account the

7  factors listed in 18 U.S.C. § 3553(a)(1)-(7), an appropriate

8  disposition of this case is that the Court impose a sentence of: one

9  year probation; $500,000 fine; $400 special assessment; and

10 forfeiture of the Forfeitable Assets.  Given defendant's cooperation

11 efforts to date for the In Re: Wildlife Trafficking Investigation in

12 the Southern District of Florida and defendant's agreement to

13 continue to cooperate in all further proceedings in the matter of

14 United States v. James Del Lolli and Darin Scott Ziebarth, Case No.

15 8:16-CR-00167, the parties agree that defendant's fine shall be

16 reduced from $500,000 to $350,000 for purposes of this binding plea

17 agreement.

18     a.  The parties stipulate and agree that the $350,000 fine

19 imposed is appropriately directed to the Lacey Act Reward Account.

20 See 16 U.S.C. §§ 1540(d) and 3375(d).

21     b.  Defendant shall satisfy such fine by hand-delivering

22 or mailing a certified check or money order made payable to the

23 "Clerk, United States District Court" to the United States District

24 Court Clerk (Attn: Fiscal), 255 East Temple Street, Room 1178, Los

25 Angeles, California 90012.  Defendant should include its name and

26 case number on the memo line of the check or money order.

27     c.  Upon receipt of such funds, the United States District

28 Court Clerk shall send the funds to the following address, with

"Lacey Act Reward Account" notated on the check: U.S. Fish and Wildlife Service, Cost Accounting Section, P.O. Box 272065, Denver, Colorado 80227-9060.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18. Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

      f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

19. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is

pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute(s) to which defendant is pleading guilty is/are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

20.  Defendant agrees that, provided the Court imposes the sentence specified in paragraph 17 above, defendant gives up the right to appeal any portion of that sentence.

21.  The USAO agrees that, provided the Court imposes the sentence specified in paragraph 17 above, the USAO gives up its right to appeal any portion of that sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

22.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1

## EFFECTIVE DATE OF AGREEMENT

2   23.  This agreement is effective upon signature and execution of

3 all required certifications by defendant, defendant's counsel, and an

4 Assistant United States Attorney.

5

## BREACH OF AGREEMENT

6   24.  Defendant agrees that if defendant, at any time after the

7 signature of this agreement and execution of all required

8 certifications by defendant, defendant's counsel, and an Assistant

9 United States Attorney, knowingly violates or fails to perform any of

10 defendant's obligations under this agreement ("a breach"), the USAO

11 may declare this agreement breached.  All of defendant's obligations

12 are material, a single breach of this agreement is sufficient for the

13 USAO to declare a breach, and defendant shall not be deemed to have

14 cured a breach without the express agreement of the USAO in writing.

15 If the USAO declares this agreement breached, and the Court finds

16 such a breach to have occurred, then: (a) if defendant has previously

17 entered a guilty plea pursuant to this agreement, defendant will not

18 be able to withdraw the guilty plea, (b) the USAO will be relieved of

19 all its obligations under this agreement, and (c) the Court's failure

20 to follow any recommendation or request regarding sentence set forth

21 in this agreement will not provide a basis for defendant to withdraw

22 defendant's guilty plea.

23   25.  Following the Court's finding of a knowing breach of this

24 agreement by defendant, should the USAO choose to pursue any charge

25 or any civil, administrative, or regulatory action that was either

26 dismissed or not filed as a result of this agreement, then:

27

28

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts, sentencing factors, or sentencing.  Defendant understands that the Court will determine the facts, sentencing factors, and other considerations

relevant to sentencing and will decide for itself whether to accept and agree to be bound by this agreement.

27.   Defendant requests leave of the Court to waive its right to preparation of a presentence investigation report at the time of its change of plea hearing, and requests leave of the Court to proceed directly to sentencing at the conclusion of the change of plea hearing.

28.   The government is not opposed to defendant's waiver of a presentence investigation report and joins in defendant's request to proceed to immediate sentencing if the Court agrees to accept this binding plea.

29.   In the event that the Court declines defendant's waiver of the preparation of a presentence report and request for immediate sentencing, defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the sentence referenced in paragraph 17 is consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the

1  USAO's obligations not to contest the facts agreed to in this

2  agreement.

3  NO ADDITIONAL AGREEMENTS

4      30.  Defendant understands that, except as set forth herein,

5  there are no promises, understandings, or agreements between the USAO

6  and defendant or defendant's attorney, and that no additional

7  promise, understanding, or agreement may be entered into unless in a

8  writing signed by all parties or on the record in court.

9  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

10      31.  The parties agree that this agreement will be considered

11  part of the record of defendant's guilty plea hearing as if the

12  entire agreement had been read into the record of the proceeding.

13  AGREED AND ACCEPTED

14  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
15  CALIFORNIA

16  TRACY L. WILKISON
   Acting United States Attorney

17

18  *Joseph O. Johns*                              May 24, 2021

19  JOSEPH O. JOHNS                                Date
   DENNIS MITCHELL
20  Assistant United States Attorneys

21  TIM LOLLI                                      Date
   Authorized Representative for
22  Defendant Lolli Bros. Livestock
   Market, Inc.

23

24  KEVIN E. J. REGAN                             Date
   The Regan Law Firm, L.L.C.
25  Attorney for Defendant Lolli Bros.
   Livestock Market, Inc.

26

27

28

1  USAO's obligations not to contest the facts agreed to in this

2  agreement.

3                        NO ADDITIONAL AGREEMENTS

4        30.   Defendant understands that, except as set forth herein,

5  there are no promises, understandings, or agreements between the USAO

6  and defendant or defendant's attorney, and that no additional

7  promise, understanding, or agreement may be entered into unless in a

8  writing signed by all parties or on the record in court.

9            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

10       31.   The parties agree that this agreement will be considered

11  part of the record of defendant's guilty plea hearing as if the

12  entire agreement had been read into the record of the proceeding.

13  AGREED AND ACCEPTED

14  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
15  CALIFORNIA

16  TRACY L. WILKISON
    Acting United States Attorney

17

18  *Joseph O. Johns*                          May 24, 2021
    JOSEPH O. JOHNS/                           Date
19  DENNIS MITCHELL
    Assistant United States Attorneys
20
                                               June 4-2021
21  TIM LOLLI                                   Date
    Authorized Representative for
22  Defendant Lolli Bros. Livestock
    Market, Inc.
23
                                               June 2, 2021
24  KEVIN E. J. REGAN                          Date
    The Regan Law Firm, L.L.C.
25  Attorney for Defendant Lolli Bros.
    Livestock Market, Inc.

26

27

28

                                  16

<u>CERTIFICATION OF DEFENDANT</u>

As the duly authorized representative of defendant Lolli Bros. Livestock Market, Inc., I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of the defendant.  I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me or defendant other than those contained in this agreement.  No one has threatened or forced me or defendant in any way to enter into this agreement.  I am satisfied with the representation of defendant's attorney in this matter, and the defendant is pleading guilty because it is guilty of the charge and wishes to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        _____
                                          Date
Authorized Representative for
Defendant Lolli Bros. Livestock
Market, Inc.
Defendant

## CERTIFICATION OF DEFENDANT

As the duly authorized representative of defendant Lolli Bros. Livestock Market, Inc., I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of the defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or defendant other than those contained in this agreement. No one has threatened or forced me or defendant in any way to enter into this agreement. I am satisfied with the representation of defendant's attorney in this matter, and the defendant is pleading guilty because it is guilty of the charge and wishes to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     June 4-2021
Authorized Representative for         Date
Defendant Lolli Bros. Livestock
Market, Inc.
Defendant

17

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2    I am Lolli Bros. Livestock Market, Inc.'s attorney.  I have

3    carefully and thoroughly discussed every part of this agreement with

4    my client's duly authorized representative(s).  Further, I have fully

5    advised my client's duly authorized representative(s) of the

6    defendant's rights, of possible pretrial motions that might be filed,

7    of possible defenses that might be asserted either prior to or at

8    trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of

9    relevant Sentencing Guidelines provisions, and of the consequences of

10   entering into this agreement.  To my knowledge: no promises,

11   inducements, or representations of any kind have been made to my

12   client's duly authorized representative(s), or the defendant, other

13   than those contained in this agreement; no one has threatened or

14   forced my client's duly authorized representative(s), or the

15   defendant, in any way to enter into this agreement; my client's and

16   the corporation's duly authorized representative(s)' decisions to

17   enter into this agreement are informed and voluntary ones; and the

18   factual basis set forth in this agreement is sufficient to support my

19   client's entry of a guilty plea pursuant to this agreement.

20

21   _____          _____
     KEVIN E. J. REGAN                        Date
22   The Regan Law Firm, L.L.C.
     Attorney for Defendant Lolli Bros.
23   Livestock Market, Inc.

24

25

26

27

28

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am Lolli Bros. Livestock Market, Inc.'s attorney.  I have carefully and thoroughly discussed every part of this agreement with my client's duly authorized representative(s).  Further, I have fully advised my client's duly authorized representative(s) of the defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client's duly authorized representative(s), or the defendant, other than those contained in this agreement; no one has threatened or forced my client's duly authorized representative(s), or the defendant, in any way to enter into this agreement; my client's and the corporation's duly authorized representative(s)' decisions to enter into this agreement are informed and voluntary ones; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

KEVIN E. J. REGAN                          Date
The Regan Law Firm, L.L.C.
Attorney for Defendant Lolli Bros.
Livestock Market, Inc.

18

**Exhibit A**

<u>FACTUAL BASIS IN SUPPORT OF PLEA AGREEMENT</u>

At all times material and relevant to the criminal allegations set forth in the indictment returned in this matter:

LOLLI BROS. LIVESTOCK MARKET, INC. ("defendant") was a Missouri corporation located at 704 Main Street, Suite A, Macon, Missouri. Defendant LOLLI BROS. was engaged in the business of buying, selling, trading, and auctioning livestock and taxidermy products, including rhinoceros mounts and horns. Co-defendant JAMES DEL LOLLI ("JAMES LOLLI") was an employee and the president of defendant. Co-defendant DARIN SCOTT ZIEBARTH was an employee of defendant, operating under the direct supervision of defendant JAMES LOLLI. As employees of defendant, both JAMES LOLLI and DARIN SCOTT ZIEBARTH were operating within the scope of their employment, and motivated, at least in part, by an intent to benefit defendant. As result, defendant is criminally liable for their criminal conduct under the well-established doctrine of respondeat superior.

<u>The Endangered Species Act</u>

The Endangered Species Act ("ESA") was enacted to provide a program for the conservation of endangered species and threatened species. Under the ESA, the term "endangered species" included any species which was in danger of extinction throughout all or a significant portion of its range. The ESA set forth a process by which it was determined whether any species was endangered. All species of wildlife determined to be endangered were listed at Title 50, Code of Federal Regulations, Section 17.11. The species Diceros bicornis, which is commonly known as the Black rhinoceros, was determined to be and was listed as an endangered species.

19

1          The Convention on International Trade in Endangered Species

2   The United States was a signatory to the Convention on International

3   Trade in Endangered Species of Wild Fauna and Flora ("CITES").  CITES

4   protected certain species of fish, wildlife, and plants against

5   overexploitation by regulating trade in the species.  Protected

6   species were listed in appendices to CITES (Appendices I, II, and

7   III).  All rhinoceros species had a minimum level of protection under

8   CITES under Appendix II, and some were listed under Appendix I as

9   well.  Black rhinoceros were protected as an Appendix I species,

10  while White rhinoceros were protected as Appendix I or II species,

11  depending on the particular subspecies.  Under Appendix I and

12  Appendix II of CITES, a species could be exported lawfully from the

13  United States only if, prior to exportation, the exporter possessed a

14  valid CITES document issued by the United States for that export

15  activity.  CITES was implemented through the ESA and regulations

16  promulgated thereunder.

17                     The Objects of the Conspiracy

18       Between on or about April 2011 through February 18, 2012, in Los

19  Angeles County, San Bernardino County, and Orange County, within the

20  Central District of California, and elsewhere, co-defendants JAMES

21  LOLLI, DARIN SCOTT ZIEBARTH, also known as "Scott Ziebarth" ("SCOTT

22  ZIEBARTH"), Felix Kha, Jimmy Kha, Mai Nguyen, Uri Bronstein, Jarrod

23  Wade Steffen, and JAMES LOLLI and SCOTT ZIEBARTH on behalf of

24  defendant, knowingly conspired and agreed to commit the following

25  offenses against the United States:

26       1.   to knowingly deliver, receive, carry, transport, and ship,

27  in interstate or foreign commerce, by any means whatsoever and in the

28  course of a commercial activity, endangered wildlife species, namely,

Black rhinoceros horn, in violation of Title 16, United States Code, Sections 1538(a)(1)(E) and 1540(b);

2.   to knowingly sell or offer for sale in interstate or foreign commerce endangered wildlife species, namely, Black rhinoceros horn, in violation of Title 16, United States Code, Sections 1538(a)(1)(F) and 1540(b);

3.   to knowingly engage in conduct that involved the sale and purchase of, offer for sale and purchase of, and intent to sell and purchase endangered wildlife, namely, Black rhinoceros horn, with a market value in excess of $350.00, and to knowingly transport, sell, receive, acquire, and purchase, and attempt to transport, sell, receive, acquire, and purchase, such wildlife, knowing that the wildlife was transported or sold in violation of, and in a manner unlawful under, the laws and regulations of the United States, in violation of Title 16, United States Code, Sections 1538(a)(1)(E), (F), 3372(a)(1), (4), and 3373(d)(1)(B);

4.   to knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of merchandise, namely, rhinoceros horn, prior to exportation, knowing that such merchandise is intended for exportation contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Section 554; and

5.   to knowingly conduct, and attempt to conduct, financial transactions, knowing that property involved in a financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, smuggling goods from the United States, an offense under Title 18, United States Code, Section 554, with the

21

1  intent to promote the carrying on of said specified unlawful

2  activity, in violation of Title 18, United States Code, Section

3  1956(a)(1)(A)(i).

4                  How the Conspiracy was Carried Out

5       Between April 2011 and February 18, 2012, co-defendant JAMES

6  LOLLI would identify CITES-protected White rhinoceros horns that were

7  available for purchase in interstate and intrastate commerce

8  throughout the United States or consignment for auction and sale

9  through defendant's auction house.  Co-defendant JAMES LOLLI would

10 identify CITES-protected and endangered Black rhinoceros horns that

11 were available for purchase in interstate and intrastate commerce

12 throughout the United States.  Co-defendant JAMES LOLLI would contact

13 Felix Kha ("California Exporter #1"), Jimmy Kha ("California Exporter

14 #2"), Mai Nguyen ("California Exporter #3") (collectively, the

15 "CALIFORNIA EXPORTERS"), and Uri Bronstein (the "EAST COAST BROKER")

16 to provide them information about CITES-protected White rhinoceros

17 horns that were available for purchase or auction sale from co-

18 defendants JAMES LOLLI, SCOTT ZIEBARTH, and defendant.  Co-defendant

19 JAMES LOLLI would contact the CALIFORNIA EXPORTERS, and the EAST

20 COAST BROKER to provide them information about CITES-protected and

21 endangered Black rhinoceros horns that were available for purchase

22 from co-defendants JAMES LOLLI, SCOTT ZIEBARTH, and defendant.  Co-

23 defendant JAMES LOLLI would contact the CALIFORNIA EXPORTERS and the

24 EAST COAST BROKER to provide them information, in exchange for an

25 agreed upon finder's fee or commission, about CITES-protected and

26 endangered Black rhinoceros horns that were available for purchase

27 from individuals throughout the United States, that had been

28 previously located by co-defendant JAMES LOLLI.  Co-defendant SCOTT

                                  22

ZIEBARTH would travel from Macon County, Missouri to locations throughout the United States to purchase CITES-protected White rhinoceros horns and CITES-protected and endangered Black rhinoceros horns for resale to the CALIFORNIA EXPORTERS and the EAST COAST BROKER.  Co-defendants SCOTT ZIEBARTH and JAMES LOLLI would sell, deliver, transport, and ship the rhinoceros horns in interstate commerce to the CALIFORNIA EXPORTERS and the EAST COAST BROKER, knowing that the rhinoceros horns would be exported from the United States.  Co-defendants JAMES LOLLI and SCOTT ZIEBARTH would use defendant's corporate funds to pay for the packaging and shipment of the rhinoceros horns to the CALIFORNIA EXPORTERS and the EAST COAST BROKER.  Co-defendants JAMES LOLLI, SCOTT ZIEBARTH, and defendant would receive payment by wire transfer or the mail from the EAST COAST BROKER for rhinoceros horns sold by them to the EAST COAST BROKER.  Co-defendants JAMES LOLLI and SCOTT ZIEBARTH, acting for themselves and on behalf of the defendant, would receive finder's fees or commissions by wire transfer or the mail from the EAST COAST BROKER for information that they provided to the EAST COAST BROKER regarding CITES-protected and endangered Black rhinoceros horns available for purchase.  Co-defendants JAMES LOLLI and SCOTT ZIEBARTH, acting for themselves and on behalf of the defendant, would receive payment by wire transfer or hand delivery from the CALIFORNIA EXPORTERS for rhinoceros horns sold by them to the CALIFORNIA EXPORTERS.  Co-defendants JAMES LOLLI and SCOTT ZIEBARTH, acting for themselves and on behalf of the defendant, would receive finder's fees or commissions by wire transfer or hand delivery from the CALIFORNIA EXPORTERS for information that they provided to the CALIFORNIA EXPORTERS regarding CITES-protected and endangered Black

rhinoceros horns available for purchase.  On many occasions, co-defendants JAMES LOLLI and SCOTT ZIEBARTH, acting for themselves and on behalf of the defendant, would be fronted, or provided, funds to purchase CITES-protected White rhinoceros horns and CITES-protected and endangered Black rhinoceros horns by the CALIFORNIA EXPORTERS in advance of the actual purchase of the horns.  Co-defendant SCOTT ZIEBARTH would travel from Macon County, Missouri to Kansas City, Missouri, to meet the CALIFORNIA EXPORTERS to receive hand-delivered payments, advance funds, and finder's fees related to the purchase of rhinoceros horns.  Co-defendants JAMES LOLLI and SCOTT ZIEBARTH knew that the funds received from the CALIFORNIA EXPORTERS were proceeds from the illegal exportation of rhinoceros horn from the United States.  Co-defendants JAMES LOLLI and SCOTT ZIEBARTH would store funds fronted, or provided to them, by the CALIFORNIA EXPORTERS for the purchase of CITES-protected White rhinoceros horns and CITES-protected and endangered Black rhinoceros horns in a safe located within defendant's business premises.  Co-defendants JAMES LOLLI and SCOTT ZIEBARTH would store the proceeds and profits from their sales of CITES-protected White rhinoceros horns and CITES-protected and endangered Black rhinoceros horns to the CALIFORNIA EXPORTERS and the EAST COAST BROKER in a safe located within the defendant's business premises.

<u>Overt Acts Committed in Furtherance of the Conspiracy</u>

On or about the following dates, co-defendants JAMES LOLLI and SCOTT ZIEBARTH met with the CALIFORNIA EXPORTERS listed, at the locations listed, to sell and auction rhinoceros horn to, or receive compensation and advance funds from, the CALIFORNIA EXPORTERS:

| Travel Date | California Exporter | Location |
|---|---|---|
| 04/08/09 | Exporter #1 | Kansas City, MO |
| 04/07/10 | Exporter #1 | Kansas City, MO |
| 04/12/10 | Exporter #1 | Kansas City, MO |
| 07/07/10 | Exporter #1 | Kansas City, MO |
| 08/09/10 | Exporter #1 | St. Louis, MO |
| 09/24/10 | Exporter #1 | Kansas City, and Macon, MO |
| 12/10/10 | Exporter #1 | Kansas City, and Macon, MO |
| 03/02/11 | Exporter #1 | Kansas City, MO |
| 03/30/11 | Exporter #1 | Kansas City, MO |
| 04/06/11 | Exporter #1 | Kansas City, MO |
| 04/28/11 | Exporters #1, #2, and #3 | Kansas City, MO |
| 05/18/11 | Exporter #1 | Kansas City, MO |
| 05/25/11 | Exporter #1 | Kansas City, MO |
| 06/02/11 | Exporter #1 | Kansas City, MO |
| 06/16/11 | Exporter #1 | Kansas City, MO |
| 07/06/11 | Exporter #1 | Kansas City, MO |
| 08/10/11 | Exporter #1 | Kansas City, MO |
| 08/23/11 | Exporters #2 and #3 | Kansas City, MO |

On or about the following dates, co-defendants JAMES LOLLI and SCOTT ZIEBARTH shipped CITES-protected rhinoceros horn to the CALIFORNIA EXPORTERS at the below-listed addresses within the Central District of California:

| Date | Listed Shipper | Receiving Address |
|------|----------------|-------------------|
| 01/26/10 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 04/12/10 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 05/07/10 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 07/06/10 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 07/13/10 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 03/03/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 03/31/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 04/11/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 04/25/11 | JAMES LOLLI | 7223 Church Street, Unit A-2, Highland, CA |
| 04/29/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 04/29/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 05/20/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 06/03/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 06/23/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 07/08/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 07/27/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 08/04/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 08/25/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 08/30/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 08/31/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 10/06/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 10/07/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |

| Date | Listed Shipper | Receiving Address |
|------|---------------|-------------------|
| 11/01/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 11/17/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 12/13/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |
| 12/22/11 | JAMES LOLLI | 9641 Bolsa Avenue, Westminster, CA |

On or about the following dates, the CALIFORNIA EXPORTERS and the EAST COAST BROKER wired funds to defendant, in the amounts listed below, for the purchase of CITES-protected rhinoceros horn that was illegally exported from the United States:

| Date | Amount of Funds Wired | Source of Wire Transfer |
|------|----------------------|-------------------------|
| 05/07/09 | $9,000.00 | California Exporter #2 |
| 07/20/09 | $8,000.00 | California Exporter #2 |
| 07/22/09 | $7,500.00 | California Exporter #2 |
| 12/14/09 | $9,700.00 | California Exporter #1 |
| 12/17/09 | $9,700.00 | California Exporter #2 |
| 01/03/10 | $9,000.00 | California Exporter #2 |
| 01/25/10 | $9,000.00 | California Exporter #2 |
| 04/29/10 | $8,000.00 | California Exporter #2 |
| 04/30/10 | $8,000.00 | California Exporter #2 |
| 05/03/10 | $8,000.00 | California Exporter #2 |
| 05/04/10 | $8,000.00 | California Exporter #2 |
| 07/12/10 | $18,000.00 | California Exporter #2 |
| 07/12/10 | $8,000.00 | California Exporter #2 |
| 10/05/10 | $132,000.00 | East Coast Broker from account in China |
| 11/01/10 | $70,000.00 | East Coast Broker |

| Date | Amount of Funds Wired | Source of Wire Transfer |
|------|----------------------|------------------------|
| 12/01/10 | $55,000.00 | East Coast Broker |
| 12/20/10 | $49,980.00 | East Coast Broker |
| 01/01/11 | $37,000.00 | East Coast Broker |
| 01/11/11 | $37,000.00 | East Coast Broker |
| 01/18/11 | $129,980.00 | East Coast Broker |
| 02/25/11 | $70,000.00 | East Coast Broker |
| 03/30/11 | $130,000.00 | East Coast Broker |
| 05/04/11 | $71,400.00 | East Coast Broker |

On or about August 25, 2009, co-defendant JAMES LOLLI sent an email using one of defendant's email accounts to W.V. in Powell, Wyoming, regarding the legality of selling rhinoceros horn in interstate commerce.

On or about February 2, 2010, co-defendant JAMES LOLLI and defendant received rhinoceros horns in the mail from W.V. in Powell, Wyoming.

In or about February 2010, co-defendant JAMES LOLLI told W.V. in Powell, Wyoming, that he did not want to issue a check from defendant's account to W.V., because he wanted to keep the rhinoceros horn purchase "off the books."

On or about January 13, 2010, co-defendant JAMES LOLLI told a representative of the United States Fish and Wildlife Service that he knew it was illegal to sell Black rhinoceros horn.

On or about July 19, 2010, C.W. contacted co-defendant JAMES LOLLI about selling two sets of Black rhinoceros horns through co-defendant JAMES LOLLI.  During subsequent discussions, co-defendant JAMES LOLLI told C.W., "if they where White it could be sold to

someone in the Middle East and could make a lot of money, but if it's a Black rhino, it's a limited market, and he could not make a commission."

On or about August 3, 2010, K.L. in California contacted co-defendant JAMES LOLLI at defendant's place of business to sell a Black rhinoceros mount with horns through defendant's auction and sales business.  Co-defendant JAMES LOLLI told K.L. that the horns could only be sold within the State of California.  Co-defendant JAMES LOLLI provided the information regarding the Black rhinoceros mount with horns to CALIFORNIA EXPORTER #1, who then purchased the mount from K.L.

On or about September 25, 2010, co-defendant JAMES LOLLI sold 29.5 pounds of White rhinoceros horns to the EAST COAST BROKER for $132,000.

On or about March 6, 2011, co-defendant JAMES LOLLI arranged for Straw Purchaser L.S. to purchase a pair of Black rhinoceros horns from K.M. in San Diego, California, for subsequent sale to CALIFORNIA EXPORTER #1.

On or about September 20, 2011, R.H. sold a pair of White rhinoceros horns to co-defendant JAMES LOLLI for $95,000.00.  At the time of sale, co-defendant JAMES LOLLI told R.H. that the destination markets for rhinoceros horn were in Asia and the Middle East.

On or about October 11, 2011 a law enforcement officer acting in an undercover capacity in the State of Iowa (the "UCO") contacted co-defendant JAMES LOLLI by email at defendant's email address "lollibros@lollibros.com" to discuss the potential sale of an unknown species rhinoceros mount.  During a subsequent phone call on October 18, 2011, co-defendant JAMES LOLLI told the UCO, "[t]hat is a Black

rhino, no doubt, no question, and it has to be sold in your state." Co-defendant JAMES LOLLI offered to have a "guy" from Iowa purchase the mount from the UCO, explaining, "[t]hat's the legal way."  Co-defendant JAMES LOLLI further explained to the UCO, "[i]f you want to, I can get it sold for you … I can't receive any commission, that's the way the law is."

On or about October 20, 2011, the UCO spoke to co-defendant JAMES LOLLI regarding the sale of the Black rhinoceros mount in Iowa. Co-defendant JAMES LOLLI explained that he was going to have an individual working with CALIFORNIA EXPORTER #1 contact the UCO to purchase the mount in Iowa.  When asked by the UCO if he could trust these people, defendant JAMES LOLLI stated as follows, "[o]h yeah, no, no, I trust the, I deal with them every day … [CALIFORNIA EXPORTER #1] is the main guy, but he's got people everywhere that, but this is the only way to keep it legal."

On November 4, 2011, after the transaction that co-defendant JAMES LOLLI set up between the UCO and CALIFORNIA EXPORTER #1 fell through, co-defendant JAMES LOLLI agreed to purchase the Black rhinoceros horns from the UCO in the State of Missouri for $30,000.

On or about November 8, 2011, co-defendants JAMES LOLLI and SCOTT ZIEBARTH met with the UCO at defendant's place of business to purchase the Black rhinoceros horns in interstate commerce between Iowa and Missouri.

On or about November 8, 2011, co-defendant SCOTT ZIEBARTH paid the UCO $30,000 cash for the Black rhinoceros horns within the "trophy room" of defendant's place of business.

On November 8, 2011, following the purchase of the Black rhinoceros horns from the UCO at defendant's business location, co-

1  defendant JAMES LOLLI stated to the UCO in the presence of co-
2  defendant SCOTT ZIEBARTH, "[t]he Blacks are a bad deal … I would
3  rather just keep a low profile on them things … we try not to do much
4  … that's why we just rather set it up and have nothing to do with
5  it."

6      On or about November 17, 2011, co-defendant JAMES LOLLI shipped
7  the Black rhinoceros horns purchased from the UCO on November 8, 2011
8  in interstate commerce from Macon County, Missouri to the CALIFORNIA
9  EXPORTERS in Orange County, California.

10      In or about September 2011, legal representatives of the J.V.
11  Trust Estate in Kansas City, Missouri, discussed the sale of a Black
12  rhinoceros mount with co-defendant JAMES LOLLI by phone and his email
13  account at defendant's business.  Co-defendant JAMES LOLLI told the
14  trust estate legal representatives that the Black rhino was listed as
15  endangered and could only be sold to a Missouri resident who agreed
16  to never take the mount out of Missouri.  Co-defendant JAMES LOLLI
17  told the trust estate legal representatives that he had "private
18  buyers" in Missouri that would be interested in purchasing the Black
19  rhinoceros horns.

20      On or about December 19, 2011, co-defendant SCOTT ZIEBARTH
21  traveled from Macon County, Missouri to Kansas City, Missouri, to
22  purchase the Black rhinoceros horns from the J.V. Trust Estate for
23  $41,250 cash, less a 10% commission for co-defendant JAMES LOLLI and
24  himself.

25      On or about December 22, 2011, co-defendant JAMES LOLLI sold and
26  shipped the Black rhinoceros horns purchased by co-defendant SCOTT
27  ZIEBARTH from the J.V. Trust Estate to the CALIFORNIA EXPORTERS in
28  Orange County, California.

On or about February 16, 2012, co-defendants JAMES LOLLI and SCOTT ZIEBARTH agreed to purchase two pairs of Black rhinoceros horns and one pair of White rhinoceros horns from R.W.N. in Tennessee with the intent to sell and deliver the horns to the CALIFORNIA EXPORTERS in Orange County, California.

On or about February 17, 2012, co-defendant SCOTT ZIEBARTH traveled from Macon County, Missouri to Mount Vernon, Illinois, to purchase in interstate commerce the two pairs of Black rhinoceros horns and single pair of White rhinoceros horns from R.W.N.

On or about February 17, 2012, co-defendant SCOTT ZIEBARTH purchased two pairs of Black rhinoceros horns and a single pair of White rhinoceros horns from R.W.N. in Mount Vernon, Illinois, for $180,000 cash, and then transported the horns back to Macon County, Missouri, where he concealed them in his residence prior to the intended sale, transportation, and shipment of the horns from defendant's business premises to the CALIFORNIA EXPORTERS in Orange County, California.

On or about December 22, 2011, in Orange County, within the Central District of California, and elsewhere, co-defendants JAMES DEL LOLLI and SCOTT ZIEBARTH conspired and agreed to knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of endangered Black rhinoceros horn, prior to exportation, knowing that such rhinoceros horn was intended for exportation by the CALIFORNIA EXPORTERS contrary to any law or regulation of the United States, that is, (1) without declaring said merchandise to officials of the United States Fish and Wildlife Service, in violation of Title 50, Code of Federal Regulations,

Section 14.63; (2) without obtaining an export permit, in violation of the Endangered Species Act, Title 16, United States Code, Sections 1538(a)(1)(A), 1538(c), and 1540(b), Title 50, Code of Federal Regulations, Section 17.21(b), and Title 50, Code of Federal Regulations, Sections 23.13(a) and 23.13(c); and (3) by transporting and shipping an endangered species in foreign commerce in the course of a commercial activity, in violation of the Endangered Species Act, Title 16, United States Code, Sections 1538(a)(1)(E) and 1540(b).

On or about February 17, 2012, in Orange County, within the Central District of California, and elsewhere, co-defendants JAMES DEL LOLLI and SCOTT ZIEBARTH conspired and agreed to knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of endangered Black rhinoceros horn, prior to exportation, knowing that such rhinoceros horn was intended for exportation by the CALIFORNIA EXPORTERS contrary to any law or regulation of the United States, that is, (1) without declaring said merchandise to officials of the United States Fish and Wildlife Service, in violation of Title 50, Code of Federal Regulations, Section 14.63; (2) without obtaining an export permit, in violation of the Endangered Species Act, Title 16, United States Code, Sections 1538(a)(1)(A), 1538(c), and 1540(b), Title 50, Code of Federal Regulations, Section 17.21(b), and Title 50, Code of Federal Regulations, Sections 23.13(a) and 23.13(c); and (3) by transporting and shipping an endangered species in foreign commerce in the course of a commercial activity, in violation of the Endangered Species Act, Title 16, United States Code, Sections 1538(a)(1)(E) and 1540(b).

On or about February 17, 2012, in Orange County, within the Central District of California, and elsewhere, co-defendants JAMES DEL LOLLI and SCOTT ZIEBARTH conspired and agreed to knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of CITES-protected rhinoceros horn, prior to exportation, knowing that such rhinoceros horn was intended for exportation by the CALIFORNIA EXPORTERS contrary to any law or regulation of the United States, that is, (1) without declaring said merchandise to officials of the United States Fish and Wildlife Service, in violation of Title 50, Code of Federal Regulations, Section 14.63; and (2) without obtaining an export permit, in violation of the Endangered Species Act, Title 16, United States Code, Section 1538(c), and Title 50, Code of Federal Regulations, Section 23.13(a) and 23.13(c).

On or about February 17, 2012, in Orange County, within the Central District of California, and elsewhere, co-defendants JAMES DEL LOLLI and SCOTT ZIEBARTH conspired and agreed to knowingly engaged in conduct that involved the sale and purchase of, offer for sale and purchase of, and intent to sell and purchase endangered Black rhinoceros horn, with a market value in excess of $350.00, and to knowingly transport, sell, receive, acquire, and purchase, and attempt to transport, sell, receive, acquire, and purchase, such Black rhinoceros horn, knowing that it was transported or sold in violation of, and in a manner unlawful under, the laws and regulations of the United States.

On or about February 19, 2012, in Orange County, within the Central District of California, and elsewhere, co-defendants JAMES DEL LOLLI and SCOTT ZIEBARTH conspired and agreed to knowingly and willfully conduct, and attempt to conduct, the movement of approximately $180,000 in funds from Macon County, Missouri to Jefferson County, Illinois, and the movement, and attempted movement, of approximately $180,000 in funds from Orange County, California to Macon County, Missouri, knowing that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity, and which funds were, in fact, the proceeds of specified unlawful activity, that is, smuggling CITES-protected and endangered rhinoceros horn, in violation of Title 18, United States Code, Section 554, with the intent to promote the carrying on of said specified unlawful activity.

STATEMENT AND POSITION OF DEFENDANT AND THE REMAINING LOLLI BROTHERS

It is the position of the three remaining Lolli brothers who currently own and operate defendant's business that all acts relative to the illegal sale of black and white rhinoceros horn and money laundering that occurred between the dates of April 2011 through February 18, 2012 were performed by their oldest brother, co-defendant JAMES LOLLI, who was the President of the corporation at the time, and co-defendant SCOTT ZIEBARTH who was an employee of defendant and operating under the direct supervision of JAMES LOLLI. Co-defendants JAMES LOLLI and SCOTT ZIEBARTH conducted their illegal activity in such a way that the other Lolli brothers were not aware

of their criminal wrongdoing.  In addition, it is the position of the remaining Lolli brothers that the evidence in this case indicates that none of the rhinoceros-related products sold by JAMES LOLLI and SCOTT ZIEBARTH were the product of illegal poaching in Africa.  Upon learning of his wrongdoing, the other Lolli brothers asked co-defendant JAMES LOLLI to leave the family business, and he did so. For the last seven years, the remaining Lolli brothers in charge of defendant's business have conducted themselves in a law-abiding fashion and refrained from handling rhinoceros products of any kind and have been in conformance with local, state, and federal laws regarding the purchase, receipt, transportation, and sale of wildlife.  Since this investigation was concluded by federal law enforcement agencies, the defendant has had no state or federal violations for similar activity.

The Government has no evidence to refute the remaining Lolli brothers' and defendant's position stated herein.